THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE CLARK, a/k/a Chris Holliday, a/k/a Chris Chaney, Defendant-Appellant.

First District (2nd Division)    No. 80-355

Opinion filed June 23, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Richard F. Burke and Frank Castiglione, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant Eugene Clark was charged with violating the conditions of his probation.[1] (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3(a)(1).) He was subsequently found guilty of that violation and was sentenced to a term of 5 years imprisonment with 2 years of mandatory supervised release. On appeal defendant asks this court to consider (1) whether the State failed to prove the violation of probation by a preponderance of the evidence, and (2) whether the trial court erred when it imposed the latter sentence upon defendant.

On December 22, 1977, the State filed a petition in the circuit court alleging defendant violated the conditions of his probation. During a hearing on the petition, Chicago police officer Michael Dolan testified that on November 17, 1977, at about 10:30 p.m., he and his partner, Floyd Soristo, were on patrol using an unmarked car. While driving in the vicinity of the 4500 block of North Sheridan Road, Chicago, they saw a woman walking north on the east sidewalk. The patrol car was about 350 feet south of the woman when Dolan saw three men attack her, throw her down to the pavement, and beat upon her. As Dolan drove the car upon the parkway, the offenders took the woman's purse and ran eastbound through an empty lot located near 4525 North Sheridan Road. Dolan and his partner gave chase by foot. When the offenders reached an alley at the rear of the lot, they ran north through an opening in a fence and toward Windsor, an east-west street. When the offenders reached Windsor, Dolan and his partner were within 25 feet of them. At the corner of the alley and Winsdor, two offenders turned east-bound on Windsor, while the other, identified as defendant, turned westbound. Dolan and Soristo lost sight of

---

[1] Defendant was sentenced to 5 years probation after he pleaded guilty to the charge of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) on October 4, 1977.

defendant for about a second when defendant rounded the corner of a building at the alley entrance. Soristo regained visual contact with defendant, ordered defendant to stop, and then arrested defendant near the scene of the attack. Dolan and Soristo then caught the other offenders and recovered the purse which was found near the fence opening.

Nadine Vesel testified she was attacked by three persons who approached from her back and pushed her to the ground. They kicked her and took her purse. Since she saw only the backs of the robbers as they attempted to escape, she could not identify defendant. She also testified that she was walking southbound when the attack occurred.

Defendant testified that he was not one of the attackers. At the time of the occurrence, he was standing at the intersection of Windsor and Sheridan Road. He was talking with someone named John when he saw Vesel walk past him. He then saw three youths attack Vesel and flee with her purse. He testified he saw the attackers run through the alley to Windsor. One attacker ran westbound on Windsor toward defendant. That attacker then ran into a building. Defendant stated that Soristo then saw defendant. The officer approached defendant and arrested him. According to defendant, the real offender was still in the nearby building.

It was stipulated that Soristo did not see defendant take the purse from Vesel. In addition, Soristo had identified the color of defendant's jacket as blue. It was further stipulated that the supplemental arrest report indicated defendant's jacket was green. That arrest report was also at variance with Soristo's recollection of the exact street address where defendant was arrested. Finally, it was stipulated that defendant was treated by a physician for alopecia, a skin disorder, during December of 1976 and January of 1977. This disorder resulted in the loss of hair in 2-inch or smaller patches upon the back of defendant's head.

I

Defendant contends the evidence is insufficient to prove a violation of probation. He argues that the victim's failure to identify him and conflicts in the evidence render the trial court's finding contrary to the manifest weight of the evidence.

A probation revocation proceeding is not a criminal trial; the State need only prove defendant violated the terms of his probation by a preponderance of the evidence. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4(c).) The instant record discloses the State met its burden of proof.

■■ Defendant claims Dolan's testimony that he saw the victim walking northbound on Sheridan Road contradicts the victim's statement that she was walking southbound. Such a discrepancy exists, but it is of minor significance and collateral to the issue of whether defendant robbed the

victim. As the trial court was the trier of fact, it is for that court to determine the credibility of witnesses and the weight to be accorded their testimony. See *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182; *People v. Reed* (1980), 80 Ill. App. 3d 771, 779, 400 N.E.2d 688.

Defendant also claims Dolan's identification testimony is incredible because on a dark night Dolan first saw the incident when he was more than 100 yards away, Dolan lost sight of the offender he was chasing, and Dolan failed to specifically note defendant's skin condition.

■■ The record indicates that at the time Dolan testified, defendant's head was shaven bald. In response to defense counsel's inquiry regarding defendant's physical features on the night of the offense, Dolan stated, "He had hair on his head." Nothing of record indicates defendant's physical features on that date were otherwise. Of more significance, however, is the fact that Dolan had encountered defendant numerous times prior to the instant offense. This familiarity. when viewed in light of Dolan's testimony that he observed defendant among the three offenders and chased him to within 25 feet before defendant was momentarily out of sight, provides sufficient opportunity to support Dolan's positive identification of defendant. Accordingly, the trial court's finding is not against the manifest weight of the evidence.

## II

Defendant challenges his sentence contending the trial court considered improper factors in its imposition of the sentence of imprisonment.

■■ The trial court considered the instant probation violation when it imposed sentence. The record also indicates that the court did not specify it considered other factors regarding defendant's original burglary conviction. After a court finds a revocation of probation, the sentencing determination must be based upon the original offense. (*People v. Ellis* (1977), 48 Ill. App. 3d 221, 224, 363 N.E.2d 33; *People v. Slaten* (1972), 5 Ill. App. 3d 405, 412, 283 N.E.2d 12.) Although a sentencing court has a wide range of discretion in imposing sentence (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882), the record should positively demonstrate the court considered the original offense as the crime upon which sentence is imposed. (See *People v. Brogan* (1979), 76 Ill. App. 3d 957, 959, 395 N.E.2d 408; *People v. Ellis.*) Thus, the trial court should indicate for the record it (1) considered the evidence, if any, received during the original trial, (2) considered any presentence reports, (3) considered evidence and information in aggravation and mitigation, (4) heard arguments regarding sentencing alternatives, and (5) afforded the defendant an opportunity to speak in his own behalf. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(a)(1)-(5).) Of course the court may consider as evidence in aggravation a defendant's conduct subsequent to the original

conviction where such evidence tends to reflect defendant's rehabilitation potential (*People v. Brogan; People v. Guiterrez* (1979), 71 Ill. App. 3d 895, 898, 390 N.E.2d 438; *People v. Deskin* (1977), 47 Ill. App. 3d 328, 330, 361 N.E.2d 1188), but the record must demonstrate a determination based upon other factors as well. The instant record does not reveal what factors the sentencing court considered beyond the act resulting in revocation of probation. We are therefore unable to determine whether that court properly exercised its discretion in resentencing defendant. Accordingly, the sentence is vacated, and a new sentencing hearing is required.

### III

Defendant also claims the circuit court's mittimus should indicate that whatever sentence is ultimately imposed, the time while on probation should be credited against that sentence. The trial court granted credit for time served in custody following the instant violation. The court did not mention whether the time served on probation should be considered as credit. Since defendant's sentence is vacated and this matter is remanded for resentencing, the trial court should consider defendant's request for credit for time served on probation in the light of applicable statutory and case law. See generally Ill. Rev. Stat. 1978 Supp., ch. 38, pars. 1005—6—4(h), 1005—8—1(c); *People v. Hills* (1980), 78 Ill. 2d 500, 507-08, 401 N.E.2d 523.

In accordance with the aforesaid reasons, the judgment of the circuit court of Cook County is affirmed, the sentence is vacated, and the cause is remanded for resentencing in accordance with the views expressed herein.

Affirmed; sentence vacated; remanded with directions.

HARTMAN, P. J., and PERLIN, J., concur.