THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLAVIN NEWELL, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CLAVIN NEWELL, Defendant-Appellee.

First District (4th Division)    Nos. 81-1075, 81-1092 cons.

Opinion filed March 25, 1982.

James J. Doherty, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for Clavin Newell.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, Paula Carstensen, and Casimir Bartnik, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Clavin Newell, was found guilty of violating his probation and sentenced to a term of 3 years in the Illinois Department of Corrections. In a subsequent proceeding the State attempted to bring defendant to trial on the merits of the underlying substantive offense. This

effort failed, however, when the trial court dismissed the information on its own motion and ruled that a criminal prosecution would be inappropriate since the State had proceeded on the violation of probation which was based on the same set of facts as the information. The State now appeals from the order dismissing the information (73 Ill. 2d R. 604(a)(1)), and defendant appeals from the revocation of his probation; the cases have been consolidated for purposes of review.

On September 17, 1980, defendant pleaded guilty to the offense of felony theft and received a sentence of 2 years probation plus 19 days in the Cook County Department of Corrections. He was arrested on October 7, 1980, and charged with attempted burglary. On November 21, 1980, the State amended the information to include a charge of burglary and also filed a petition to revoke defendant's probation based on the same offense. The petition alleged that defendant knowingly entered a building located at 51 West 149th Street, Harvey, Illinois, with the intent to commit a theft therein. Over defense objections the State was permitted to proceed on the violation of probation, and a hearing was held on March 23, 1981.

At that hearing, Ralph Goldba testified that he is employed as a night operator by the city of Harvey water department. On October 7, 1980, he was working alone in the building noted above when he observed defendant walk toward the building about 2:20 a.m. Defendant looked in the window, then went across to the alley. Mr. Goldba called the police, then heard glass breaking. He called the police again and was advised by the dispatcher that the police had arrived. He went out to the squad car and identified defendant as the person whom he had previously seen. Mr. Goldba stated that there were dim night lights on inside the building, but that the outside was illuminated by vapor lights from the building across the street. He also stated that there is an office in the building which contains a television set, radio equipment and electronic office machines, and that he did not give anyone permission to enter the building that day or to take anything from it.

William Newton, a detective with the Harvey police department, testified that on the date and time in question he responded to a radio dispatch of an attempted break-in at the Harvey pumping station. When he arrived he observed defendant partially inside a window on the side of the building attempting to pry open the interior window with a table leg. He explained that the interior window was actually a plastic shield set back from the wall on brackets which extends about the length of the window. The exterior window was broken, the glass was shattered, and defendant was either sitting on the ledge between the windows or leaning on it. When Officer Newton drove up, defendant ran away, and the officer followed him into an alley until defendant ran between two

houses. Less than a minute later he observed defendant standing next to another police officer. The defendant was placed in a police vehicle and returned to the scene.

Defendant's motion for a directed finding of not guilty was denied and defendant then testified that he did not attempt to break into the Harvey pumping station. He stated that about 2:20 a.m. he left his girlfriend's house, walked down the street, passed by an alley and was arrested by the police. He stated that he just met the girl and did not know her last name or her address, but knew that she lived next door to a church which was about 4 blocks away from the pumping station. After he was arrested, he was taken back to the scene, wearing a black tam on his head. Defendant stated that the man, who came to identify him, said that the offender was shorter than defendant. He also stated that Officer Newton, whom he had known previously, told him that if he would tell him about the guns he would let him walk out the door of the police station.

In rebuttal, Officer Newton denied defendant's allegation and stated that at the time of the incident the investigation regarding the recovery of certain weapons had been concluded although not all of the guns were found. Mr. Goldba testified in rebuttal that when he went over to the police car to identify defendant, the latter was not wearing a hat and he asked defendant to put it on. He also stated that he described defendant as tall and lanky, and identified him by his build, the shape of his face, his hat and his clothes. He did not say that the offender was shorter than the defendant.

In announcing his findings at the close of evidence, the trial judge stated that he believed the State's witnesses substantially more than defendant, and that there was "entry within the curtilage of the particular premises by the Defendant when he went in the one window." He then found that the defendant was in violation of probation and entered judgment on the finding. Defendant's motions for a new hearing and arrest of judgment were argued and denied, and defendant was sentenced to a term of 3 years on the prior offense of felony theft. Credit was given for the time spent in custody, but not for those days served satisfactorily on probation prior to his being taken into custody.

On April 29, 1981, before a different trial judge, defendant moved to dismiss the information. Through counsel he contended that a criminal prosecution on the same charges which provided the basis for the probation revocation would amount to double jeopardy. The State argued that the violation of probation is separate from the criminal charge and pointed out that, if a criminal conviction were obtained first, there was nothing to prevent the State from proceeding on the probation revocation on the same charge. The trial court dismissed the information on its own motion stating that a trial on the merits would be inappropriate

based on general considerations of due process. In response to a direct question by the prosecutor, the trial court stated that "if the violation is based upon the same facts and same incident and transaction that a new information is based on the State must proceed on one or the other."

On appeal defendant first contends that the evidence presented by the State failed to show the requisite "entry" or "intent" to establish the crime of burglary. Alternatively, he argues that if the evidence is sufficient to show attempted burglary the judgment must be modified and the cause remanded for resentencing.

It is well established that criminal offenses which serve as a basis for the revocation of probation need only be proven by a preponderance of the evidence. (*People v. Cooper* (1977), 66 Ill. 2d 509, 363 N.E.2d 817; Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—4(c).) A reviewing court will not disturb the determination of the trial court in these proceedings unless it is contrary to the manifest weight of the evidence. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.) The essence of the crime of burglary is an unlawful entry with the requisite intent (*People v. Urbana* (1959), 18 Ill. 2d 81, 163 N.E.2d 511), and these elements may be established by circumstantial evidence and the inferences drawn therefrom. *People v. Blakeney* (1978), 59 Ill. App. 3d 119, 375 N.E.2d 1309.

In the case at bar defendant was discovered sitting or leaning on the ledge between the windows of the building prying at the inner shield with a table leg. The outer window had been broken and defendant was surrounded by shattered glass. The evidence also showed that the building contained estimable property, and when the officer approached, defendant ran away from the scene and was apprehended moments later.

The defendant maintains that this evidence was insufficient to support a finding that he "entered" the building. The trial court found entry "within the curtilage" when defendant went into one window. Technically, "curtilage" refers to the space or ground and building immediately surrounding a dwelling place (Black's Law Dictionary 460 (4th ed. 1968)), an area which has been held insufficient to sustain a burglary conviction. (See *People v. Urbana.*) In those cases which have upheld burglary convictions, the defendant had penetrated the close of the premises in some manner. (See, *e.g., People v. Palmer* (1980), 83 Ill. App. 3d 732, 404 N.E.2d 853; *People v. Songer* (1963), 28 Ill. 2d 433, 192 N.E.2d 861.) Applying these guidelines to the case at bar, it is apparent that defendant had not entered the building but was still on the outside when his efforts to gain entry were interrupted by the arrival of Officer Newton.

■■ The evidence did clearly establish, however, that defendant committed the lesser included offense of attempted burglary in that he had taken a substantial step toward knowingly entering the pumping station

with the intent to commit a felony or theft therein. (*People v. Fletcher* (1978), 72 Ill. 2d 66, 377 N.E.2d 809; Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 19—1.) By this action defendant violated the condition of his probation which prohibited him from engaging in criminal conduct during this period. Under these circumstances the trial court properly found that defendant was in violation of probation and the order revoking defendant's probation is affirmed. See *People v. White* (1975), 33 Ill. App. 3d 523, 338 N.E.2d 81.

Once probation is revoked, the trial court may sentence defendant to any disposition that would have been appropriate for the original offense. (*People v. Matlock* (1981), 97 Ill. App. 3d 842, 423 N.E.2d 976.) While sentencing must be based upon the original offense and the record should positively demonstrate that it was (*People v. Clark* (1981), 97 Ill. App. 3d 953, 424 N.E.2d 9), the trial court may properly consider defendant's conduct on probation, including the crime giving rise to the revocation, in assessing the defendant's rehabilitative potential (see *People v. Matlock*; *People v. Hardy* (1972), 8 Ill. App. 3d 854, 291 N.E.2d 242).

■■ In the case at bar the trial court explained to defendant that he was being sentenced on the felony theft conviction. When the remarks of the trial court cited by defendant are read in their entirety, it is clear that the trial court was concerned with the fact that defendant had violated his probation just 30 days after he was sentenced. This reflects a proper consideration of defendant's rehabilitative potential rather than the degree of the underlying offense. The sentence of 3 years' imprisonment for the Class 3 felony, one year above the minimum, is within the range available to the sentencing court. Under the circumstances outlined above, we do not believe that resentencing is warranted.

In the proceedings which followed, the State was precluded from bringing defendant to trial on the criminal offense which also provided the basis for the probation revocation. The sole issue presented for review by the State is whether it is required to delay probation revocation proceedings until a trial is had on the criminal offense which constituted the violation of probation.

Illinois courts have consistently held that the State may seek both a revocation of defendant's probation and a criminal conviction based on the same conduct. (*People v. Smith* (1980), 87 Ill. App. 3d 526, 409 N.E.2d 157; *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766.) They have also recognized that defendant has no right, nor is the State obliged, to have probation revocation proceedings delayed until a trial is had on the criminal offense which constitutes a violation of probation. (*People v. Huff* (1976), 44 Ill. App. 3d 273, 357 N.E.2d 1380; *People v. Harkness* (1975), 34 Ill. App. 3d 1, 339 N.E.2d 545.) The supreme court has held, however, that under the principle of collateral estoppel the State is barred

from proceeding on a probation revocation where defendant was acquitted of the same charge. *People v. Grayson* (1974), 58 Ill. 2d 260, 319 N.E.2d 43.

In the case at bar the trial court ruled that since the State elected and did proceed on the violation of probation, a disposition was had on the elected matter and defendant was sentenced, the State was barred under a "mixed issue of collateral estoppel and *res judicata*" from bringing a criminal prosecution.

Defendant maintains that this decision is supported by the ruling in *People v. Bone* (1980), 82 Ill. 2d 282, 412 N.E.2d 444, where the supreme court held that a subsequent criminal prosecution was not barred under *res judicata* or collateral estoppel where no evidence was offered on the charges which were now the subject of the criminal prosecution and no ultimate fact was determined on these charges at the revocation proceeding. In the same case the supreme court noted with approval (82 Ill. 2d 282, 288) the American Bar Association Standard 5.3, which states:

> "A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge."

The inference drawn by the defendant is that collateral estoppel and *res judicata* will bar prosecution on charges previously heard and decided at a revocation hearing.

Illinois courts have generally held these proceedings to be separate and distinct, however, and have noted significant differences. A petition to revoke probation is not a criminal indictment or information, and a judgment revoking probation is not a felony conviction. (*People v. DeWitt* (1979), 78 Ill. 2d 82, 397 N.E.2d 1385.) In addition, the sentence imposed upon revocation of probation is for the original crime; it is not punishment for the offense which led to the revocation proceedings. Thus, there is no question of double jeopardy or of being punished twice for the same offense. (*People v. Howell* (1977), 46 Ill. App. 3d 300, 360 N.E.2d 1212.) Moreover, as the *Vahle* court pointed out, the consequence of finding double jeopardy under these circumstances would be to allow defendant a free crime since a probationer, already convicted of a crime, would know that he could commit another one and receive only one prison sentence for two separate crimes. *People v. Vahle* (1978), 60 Ill. App. 3d 391, 396.

The constitutional concept of double jeopardy protects an individual against a second prosecution for the same offense after either acquittal or conviction and protects against multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) The test to determine whether two actions are prosecutions for the same offense is: "Would the same evidence sustain the proof

of each offense?" (*People v. Gray* (1977), 69 Ill. 2d 44, 49, 370 N.E.2d 797.) In *Gray*, the defendant was found in contempt of court and sentenced to 6 months in prison and then found guilty of aggravated battery and sentenced to another prison term for the same conduct. In a similar vein defendant maintains that proof of the unlawful entry would constitute a burglary and a violation of probation and therefore amount to the same offense for purposes of double jeopardy.

■■ We decline to adopt that interpretation. After considering the qualitative differences noted in the two proceedings by the courts of this State, we believe that the State may proceed with a probation revocation and a prosecution for the underlying criminal offense without placing defendant in double jeopardy. At this time there is no requirement that the prosecution on the criminal charge precede the probation revocation, nor a definitive ruling that collateral estoppel bars a subsequent prosecution when the probation revocation was not resolved favorably to defendant. See *People v. Warne* (1976), 39 Ill. App. 3d 894, 350 N.E.2d 836; *People v. Ward* (1980), 80 Ill. App. 3d 253, 399 N.E.2d 728.

The judgment of the circuit court of Cook County revoking defendant's probation and sentencing him to 3 years' imprisonment is affirmed (No. 81-1075); the judgment dismissing the information is reversed and the cause remanded for further proceedings consistent with this opinion (No. 81-1092).

Affirmed (81-1075); reversed and remanded (81-1092).

JOHNSON, P. J., and ROMITI, J., concur.